BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Parker

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07 668 PJH |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | |
| MELVIN PARKER, | |
| Defendant. | **Hearing Date**: Wednesday, June 18, at 1:30 p.m. |

**Introduction**

In a carefully-negotiated 11(c)(1)(C) disposition, Melvin Parker has pleaded guilty to a very lengthy guideline sentence that is (largely) endorsed by both the Office of Probation and the government. In light of Mr. Parker's early acceptance of responsibility, and the very difficult childhood suffered by the defendant, the defense would respectfully request that the Court impose a sentence of a decade of custody, and five years of supervised release.

//

**Objections**

The PSR reflects one defense objection regarding the description of the conduct described in a prior arrest in paragraph 38.

In addition, the defense has denied some of the conduct alleged in the presentence report. *See PSR* at 4 ¶¶ 8, 9, 10, 11; 5 ¶¶ 13, 14.

None of the factual discrepancies in the above paragraphs deny Mr. Parker's guilt for the offense charged. To be clear, the Presentence Report alleges – and the defense concedes – that Mr. Parker had sex with the minor victim Anne, prostituted her, was aware of her status as a minor, and encouraged her to return to California from Washington.

From the perspective of the defense, the factual discrepancies primarily relate to hearsay or unsubstantiated facts (such as speculation that Mr. Parker had a gun), or allegations that Mr. Parker had sex with the second minor victim, Christa (conduct that is not charged, and does not enter into the guideline calculations).

These disputed facts may, of course, factor into the Court's calculus as to where to sentence within the agreed-upon range of one-hundred and twenty months to one-hundred and thirty months. Mr. Parker (or the government) could accordingly request an evidentiary hearing on those facts.

The defense is aware of its right to seek a hearing on these facts. It is further aware of the reality that these facts may be part of the Court's analysis as it decides where to sentence within the stipulated range. Aware of this right and of this reality, the defense concedes its right to an evidentiary hearing and agrees that the Court may resolve these facts – if necessary – on the papers and evidence *extant*, if it imposes a sentence within the range contemplated in the plea agreement. Mr. Parker is anxious to resolve this case, and the defense has no interest in further involving the minor victims in this litigation.

The defense believes, however, that even if the Court resolves these factual disputes against Mr. Parker, a sentence of ten years is still appropriate.

**Discussion**

If the Court accepts the agreement negotiated by the parties, the sole dispute remaining is over ten months of custody: the difference between 120 and 130 months. The defense would urge the Court to accept the guideline-resolution negotiated by the parties.

The defense also asks that the Court impose a sentence at the low-end of the range. On that point, the government and Probation part ways with the defense.

The defense relies upon twin theories buttressing its request for a sentence of 120 months: Mr. Parker's extraordinarily early acceptance of responsibility, and his very difficult childhood and lack of youthful guidance.

First, the Court will recall that undersigned counsel was not originally appointed to represent Mr. Parker. Instead, AFPD Dan Blank had the case, and had developed a relationship with the defendant as they discussed these very difficult charges. AFPD Kalar was assigned to the case during Mr. Blank's extended leave.

It is never easy for a defendant to deal with a change of counsel. That is doubly true when a case involves such dramatically high sentencing exposures. Despite this change of counsel (a change that was quite beyond Mr. Parker's control), this defendant continued to handle these charges with grace and dignity, and with a maturity that candidly acknowledges his guilt and that accepts the serious custodial repercussions.

Mr. Parker made his initial appearance before this Court on November 7, 2007. In less than a month – and with no motions set and no trial date contemplated – Mr. Parker was seeking a date for a change of plea. The fact that the plea did not take place until January of 2008 is the fault of undersigned counsel, and he learned this new case and developed a rapport with the defendant. Notably, even with a new public defender suddenly appearing, the plea stayed on track, no motions were filed, no complaints were lodged about new representation, and Mr. Parker made no request for new CJA counsel.

The PSR and the government both emphasize facts in support of their position for a sentence above 120 months. Those facts do exist, and those arguments do have some

merit. It is also fair, however, to acknowledge that this defendant has voluntarily admitted extraordinarily serious charges and has agreed to at least a decade of incarceration, that he did so very early in the case, and that he did so despite changes in counsel that were not his fault. This early acceptance not only saved the Court's and the government's scarce resources – it avoided any further involvement of the minors in litigation after their already-traumatic experiences. The defendant's very early acceptance of responsibility is a factor that fairly weighs in favor of a sentence at the low end of the guideline range.

Mr. Parker's very difficult childhood is another factor that supports a sentence at the low end of the stipulated range of 120 months to 130 months. His mother was a drug addict who abandoned Mr. Parker early in life. *See PSR* at 11 ¶ 52. Indeed, given some mental health issues that now appear to be in play with this defendant, one wonders whether Mr. Parker may have suffered impairment while in the womb from his mother's use of controlled substances.

Mr. Parker's father was also absent from this defendant's childhood. That man was incarcerated since the defendant was five. *Id.* The parents were never married, and were basically absent from Mr. Parker's life. *Id.* at 12 ¶ 55 ("Between ages five and ten, the defendant only had contact with his mother approximately three times.")

Instead of being raised by his birth parents, Mr. Parker and his sibling were raised by a nightmarish parenting duo: a grandfather who was distant and refused to get involved in the care of the children, and a grandmother who was physically abusive. *Id.* at 11-12: ¶¶ 52-53. Parker was taken from his addicted mother at the age of five by Child Protective Services, and placed in the "care" of these grandparents. *Id.* at 12.

Mr. Parker's grandmother's idea of discipline was physical abuse. She hit the child with a ping pong paddle with a holes drilled in it, a switch, a belt, an electrical cord. *Id.* at 12 ¶ 53. This abuse, coupled with the failure to deal with Mr. Parker's special education needs, left the child frustrated, lonely, and desperate for love and friendship. *Id.* at ¶ 53. When these basic needs of a child were not met in the home, Mr. Parker fled the house and lived on the streets. By the age of fourteen, Mr. Parker was essentially homeless,

visiting his grandparents occasionally but largely "squatting" in friend's and girlfriends' homes. *Id.*

**To be clear, the abuse suffered by Mr. Parker as a minor does not justify the abuse of minors by Mr. Parker as an adult.** The cycle of abuse must be stopped – and punished – at some point, and Mr. Parker has voluntarily agreed to a decade of incarceration for his crimes. The physical abuse of Mr. Parker as a child, however, and his childhood spent on the streets, are part of the "history and characteristics of the defendant" that merit a sentence at the low-end of the guideline range: 120 months. *See* 18 USC § 3553(a)(1).

## Conclusion

The parties, Probation, and the Court will agree that Mr. Parker's conduct in this case was both atrocious and offensive. The Sentencing Commission views this conduct in precisely the same way – even with the reduction for acceptance of responsibility the guideline range for this crime begins with ten years.

The negotiated disposition in this matter (begun by Mr. Blank and Ms. Barton, and completed by AFPD Kalar) is precisely what the Court should encourage in the face of such difficult cases. A guideline resolution, very early in the case, reveals that the defendant acknowledges his guilt and is on the path towards rehabilitation. This is particularly true when a defendant is voluntarily accepting a decade of custody. Moreover, this early resolution preserves scarce resources and keeps the minor victims out of the litigation.

This Court should encourage pretrial resolutions by adopting the guideline sentence urged by both parties. In addition, for the reasons described above, it should

//
//
//
//
//

1  impose a sentence at the low end of the stipulated range: 120 months.

Dated: June 12, 2008

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                          /s

                                          STEVEN G. KALAR
                                          Assistant Federal Public Defender